IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KENYON REYNOLDS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:15-cv-262-JPG-DGW |
| ) | |
| UNITED STATES OF AMERICA and ) | |
| STEPHANIE HALL, ) | |
| ) | |
| Defendants. ) | |

**REPORT AND RECOMMENDATION**

**WILKERSON, Magistrate Judge:**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by United States District Judge J. Phil Gilbert pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(a) for a Report and Recommendation on the question of whether Plaintiff exhausted his administrative remedies prior to filing this lawsuit, as required by the Prison Litigation Reform Act, 28 U.S.C. § 1997e(a). For the reasons set forth below, it is **RECOMMENDED** that the Motion for Summary Judgment filed by Defendants on July 29, 2016 (Doc. 52) be **GRANTED**, and that the Court adopt the following findings of fact and conclusions of law.

### INTRODUCTION

Plaintiff was an inmate at the United States Penitentiary in Marion, Illinois, when he filed suit alleging that officials at that prison failed to protect him from an assault and failed to provide subsequent medical care for his injuries (Doc. 12). Plaintiff is proceeding on two counts:

> Count 1: Defendant United States, by and through the negligence or deliberate indifference of USP-Marion officials, is liable under the FTCA for Plaintiff's assault on September 4, 2013, and his resulting injuries; and,

> Count 2: Defendants violated Plaintiff's right to be free from cruel and unusual punishment, in violation of the Eighth Amendment and *Bivens*, when they failed to protect him from an inmate assault on September 4, 2013.

(Doc. 19).

Defendants seek summary judgment on the affirmative defense of failure to exhaust administrative remedies as to Count 2 only.[1] They argue that while Plaintiff initiated the grievance process, he did not pursue or appeal his grievance consistent with regulations. In response, Plaintiff states that he has limited recollection of the grievance process because of the injuries he sustained as a result of the assault. On February 2, 2017, a hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), was held in which Plaintiff and Plaintiff's counsel appeared by telephone[2] and Defendants appeared by (in person) counsel. Plaintiff testified along with Gary Burgess, a case manager at USP Marion, and Tracy Knutson, a Bureau of Prisons attorney who is familiar with the SENTRY program.

### FINDINGS OF FACT

It is undisputed that Plaintiff attempted to informally grieve the assault by submitting a BP-8 form to his counselor on November 7, 2013 (Doc. 59-1, p. 1). In this grievance, Plaintiff complained about the September 4, 2013 assault[3] by another inmate in the food services area, indicated that the assault was prolonged and without staff intervention, and stated that it resulted

---

[1] While FTCA claims also are subject to an exhaustion requirement, *Gray v. United States*, 723 F.3d 795 (7th Cir. 2013), Defendants do not argue that Plaintiff failed to exhaust as to Count 1.

[2] Plaintiff is currently incarcerated at the Terminal Island Federal Correctional Institution in San Pedro, California which does not have video-conferencing capabilities.

[3] After the assault, prison records reveal that Plaintiff was hospitalized until September 7, 2013 (Doc. 52-4, p. 1). He was then sent to the hospital on September 11, October 10, October 15, and November 1, 2013 and returned to the prison the same day (*Id.*). Thereafter, his hospital trips were spaced apart and it is unclear whether those trips were related to the September 4, 2013 assault.

in serious injuries. The grievance is type-written. Plaintiff's counselor responded on November 14, 2013[4], stating that the matter would be investigated by the "appropriate department." The response indicated that a BP-9 form was given to Plaintiff on November 15, 2013. Plaintiff filled out a BP-9 form and dated it November 16, 2013 (Doc. 59-1, p. 2). There is neither a signature on the form nor any institutional response. It is undisputed that Plaintiff submitted the form and that a response was made on December 9, 2013 (Doc. 57, p. 3). The record does not contain a copy of the response. It is also undisputed that there is no record that Plaintiff appealed the decision by filing a BP-10 and BP-11.

At the hearing, Plaintiff stated that he didn't remember much of the grievance process and that he had other inmates assisting him in drafting and submitting his grievance forms. After the alleged assault, he was traumatized and suffered from headaches, dizziness, and memory problems. Thus, he did not recall receiving a response to the BP-9. And yet, Plaintiff indicated that when he turned in the BP-8 to his counselor, he recalls his counselor laughing at him in an attempt to discourage him from grieving the issues. He also timely submitted the Standard Form 95, which is required in order to pursue a Federal Tort Claims Act, in March 2014 (Doc. 59-1, p. 4-5). However, Plaintiff had help from other (unspecified) inmates in preparing and submitting that document in addition to the complaint in this matter.

Gary Burgess testified that inmates, like Plaintiff, undergo a standard intake process when they enter a new prison and are given a handbook which explains the grievance process – Plaintiff was given such a handbook when he arrived at USP Marion on September 11, 2012. The step-by-step grievance process also is explained to incoming inmates at USP Marion by Mr. Burgess during orientation.

---

[4] The document indicates that the counselor signed the grievance response on July 14, 2013, but this appears to be a typographical error.

Tracy Knutson testified that the Bureau of Prison's database, SENTRY, tracks grievances filed by inmates. The records reveal that Plaintiff submitted the BP-9 (or rather that it was received) on November 18, 2013 and that a response was generated on December 9, 2013 (Doc. 52-5, p. 2). She further testified that even though the grievance may have been untimely, it was accepted by the administrative remedy coordinator. Ms. Knutson noted that the institution was unable to locate its copy of the response and that, while the SENTRY entry indicates that a copy was given to Plaintiff, she has no knowledge of whether it was actually received by Plaintiff.

In sum, Plaintiff was assaulted on September 4, 2013 and spent three days in the hospital, he submitted a BP-8 on November 7, 2013, his counselor responded on November 14, 2013, he submitted a BP-9 on November 16, 2013, a response was generated on December 9, 2013, and Plaintiff filed suit on March 9, 2015.

The Court finds that Plaintiff is not credible in his assertion that he had significant memory problems that affected his ability to file grievances. Plaintiff received verbal instructions on how to file and appeal a grievance and he had access to a handbook that described the procedure. There is no evidence to suggest that Plaintiff suffered from any memory problems during the time that he was submitting grievances. A few days after the assault, Dr. Partrick Cook indicated that Plaintiff's "behavior [did] [ ] not suggest significant mental problems" (Defendants' Exhibit 2). On November 1, 2013, a few days prior to the submission of the BP-8, Roxanne Wayne-Terry of Barnes Jewish Hospital[5] indicated that Plaintiff "does not have memory problems" (Def. Ex. 4). When Plaintiff was evaluated during a chronic care encounter at the prison on October 22, 2014, there was no indication of a mental

---

[5] It is unclear from the record what type of health professional Ms. Wayne-Terry is. The Court assumes, however, that she was at least a nurse because clinical findings, including a blood pressure reading, were noted.

defect, although he did complain of dizziness (Def. Exp. 3)

In addition, Plaintiff's BP-8 offers a detailed account of the assault and Plaintiff's injuries. Even if another inmate had assisted Plaintiff in writing the grievance, they must have received such details from the Plaintiff himself (details that included a direct quote from a Ms. Hall). And, on January 27, 2014, Plaintiff submitted an additional grievance regarding payment he was owed for work completed in August, 2013. Again, the level of detail in this grievance reveals that, even if Plaintiff received assistance in drafting it, he had no memory deficits. Plaintiff also was capable of determining that he needed to submit a claim for damage, injury, or death in order to pursue an FTCA claim. Therefore, this Court finds that Plaintiff is not credible in his claim that memory problems prevented him from exhausting his administrative remedies.

## CONCLUSIONS OF LAW

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FEDERAL RULE OF CIVIL PROCEDURE 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970); *Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case

necessarily renders all other facts immaterial." *Id.* The Seventh Circuit has stated that summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)).

> The Prison Litigation Reform Act provides:
>
> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is a precondition to suit. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). *See also Perez v. Wis. Dept. of Corr.*, 182 F.3d 532, 534-535 (7th Cir. 1999) (stating that §1997e(a) of the PLRA "makes exhaustion a precondition to bringing suit" under § 1983). Failure to exhaust administrative remedies is an affirmative defense; defendants bear the burden of proving a failure to exhaust. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Dole v. Chandler*, 483 F.3d 804, 809 (7th Cir. 2006). The Supreme Court has interpreted the PLRA to require "proper exhaustion" prior to filing suit. *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006). This means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Id.* at 90, (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). In finding that the PLRA requires proper exhaustion, the Supreme Court agreed with the Seventh Circuit's interpretation of the statute as stated in *Pozo*, which required an inmate to "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025. In *Pavey*, the Seventh Circuit instructed District Courts to conduct a hearing to determine whether a Plaintiff has exhausted his remedies. *Id.* 544 F.3d at 742. If a Plaintiff has exhausted his remedies, the

case will proceed on the merits. If, however, a Plaintiff has not exhausted, the Court may either allow Plaintiff to exhaust or terminate the matter.

Federal prisoners must exhaust administrative remedies by following the guidelines set by the Bureau of Prisons. *See* 28 C.F.R. §542.10 et seq. Generally, an inmate incarcerated in a federal prison must take the following four steps to exhaust his administrative remedies. First, he must attempt to resolve his grievance informally with the prison's staff. 28 C.F.R. §542.13. Second, after trying to resolve his concerns informally, he may submit a written Administrative Remedy Request (Form BP-9) to the Warden. 28 C.F.R. §542.14. These first two steps must be performed within 20 days of the incident about which the inmate complains. *Id.* Third, if his administrative remedy request is denied, he may appeal it to the appropriate Regional Director by submitting a Form BP-10. 28 C.F.R. § 542.15. And fourth, if the inmate is unsatisfied with the Regional Director's response, he may appeal that decision to the General Counsel (Form BP-11). *Id.*

In this matter, it is undisputed that Plaintiff submitted a BP-8 in an attempt to informally resolve his grievance. He received a response from his counselor that did not resolve the issue and he then submitted a BP-9 which was received by USP Marion beyond the 20 days provided by the regulations. It is also undisputed, however, that the grievance was accepted and responded to on the merits. And, while the parties argued about whether Plaintiff received a response to the BP-9, there is no evidence that he actually received a response nor is there any evidence that he submitted a BP-10 or a BP-11.

If Plaintiff had received a response he should have appealed by filing a BP-10 within 20 days. Assuming that Plaintiff did not receive a response, the regulations state that "the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18. Thus, if

Plaintiff submitted the BP-9 on November 16, 2013 and it was filed on November 18, 2013, he should have expected a response within 20 days, or December 8, 2013. *Id*. When he didn't receive a response by that date, he had 20 days, or until December 28, 2013 (or thereabouts to account for mailing) to appeal to the Regional Director by submitting a BP-10. There is a dearth of evidence as to whether Plaintiff submitted a BP-10: He indicates that he doesn't remember and the records do not reveal that one was filed.

Plaintiff argues or indicated at the hearing that there were a number of reasons why he was not required to submit a BP-10. First, he didn't get a response to the BP-9. That excuse is rejected because the regulations indicate that he could file a BP-10 even if he does not get a response to the BP-9. He next argues that he was ignorant of the grievance process. This argument is also rejected because Plaintiff received verbal and written instructions on how to file a grievance and has represented that he has a high school education (meaning that he can read and write in English) (*See* Doc. 13). Plaintiff was obviously aware that there was a grievance process (he submitted a grievance after all) and the regulations further describe that he could get help from others including prison staff. 28 C.F.R. § 542.16. Relatedly, the Court finds his statements that he had memory problems to be not credible. Third, he argues that his counselor's response was a non-response and therefore he was not required to appeal because it would be futile. Plaintiff did, in fact, appeal the counselor's response so it follows he didn't think that an appeal was futile. In any event, a belief that the grievance process is futile does not excuse the requirement that Plaintiff fully exhaust his administrative remedies. *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015) ("The prisoner must do so even if he expects the process will ultimately be futile.").

Finally, Plaintiff appears to argue that he was incapable of submitting additional

grievances because they were unavailable to him. An inmate is required to exhaust only those administrative remedies available to him. *See* 42 U.S.C. § 1997e(a). While in the context of state regulations, the Seventh Circuit has held that administrative remedies become "unavailable" when prison officials fail to respond to inmate grievances, *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005), in this matter, the failure to respond is governed by the regulation identified above. *See Regaldo v. Linaweaver*, 2013 WL 1196593, *4 (N.D. Ill. 2013). Unlike state regulations, federal regulations provide a course of action if authorities do not respond to a grievance: an inmate should deem a failure to respond within the time frame to be a denial and he should appeal. There was no evidence that any person prevented Plaintiff from submitting and appealing grievances. To the extent that Plaintiff may have argued that his counselor's laughing deterred him, no person of ordinary firmness would have been dissuaded from pursuing his claim by such conduct. In any event, Plaintiff did appeal his counselor's response (and submit another grievance and damages claim) so he was not deterred in fact. Thus, the process was not rendered unavailable to Plaintiff: he simply forfeited the grievance process when he caused the unavailability of a remedy by not appealing his grievance. *See Kaba*, 458 F.3d at 684.

## RECOMMENDATIONS

For the foregoing reasons, it is **RECOMMENDED** that the Motion for Summary Judgment filed by Defendants on July 29, 2016 (Doc. 52) be **GRANTED**, that Stephanie Hall and Count 2 be **DISMISSED WITHOUT PREJUDICE**, and that the Court adopt the foregoing findings of fact and conclusions of law.

If the Court adopts this Report and Recommendation, Plaintiff shall proceed on one count:

> Count 1: Defendant United States, by and through the negligence or deliberate indifference of USP-Marion officials, is liable under the FTCA for Plaintiff's assault on September 4, 2013, and his resulting injuries.

Pursuant to 28 U.S.C. § 636(b)(1) and SDIL-LR 73.1(b), the parties shall have fourteen (14) days after service of this Report and Recommendation to file written objection thereto. The failure to file a timely objection may result in the waiver of the right to challenge this Report and Recommendation before either the District Court or the Court of Appeals. *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: February 16, 2017**

                                        **DONALD G. WILKERSON**
                                        **United States Magistrate Judge**