UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

KENYON G. REYNOLDS,

    Plaintiff,

    v.

UNITED STATES OF AMERICA,

    Defendant.

Case No. 15-cv-262-JPG-GCS

# MEMORANDUM AND ORDER

This matter comes before the Court on the Report and Recommendation ("Report") (Doc. 117) of Magistrate Judge Gilbert C. Sison recommending that the Court (1) deny the United States' motion for summary judgment for lack of subject matter jurisdiction because of the discretionary function exception to the Court's jurisdiction over claims under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b) & 2671-2680, (Doc. 90); and (2) deny the United States' motion to dismiss for lack of subject matter jurisdiction on the grounds that plaintiff Kenyon G. Reynolds' claim is barred by the Inmate Accident Compensation Act ("IACA"), 18 U.S.C. § 4126(c)(4) (Doc. 92). The United States has objected to the Report (Doc. 118), and Reynolds has responded to that objection (Doc. 119).

## I.     Report Review Standard

The Court may accept, reject or modify, in whole or in part, the findings or recommendations of the magistrate judge in a report and recommendation. Fed. R. Civ. P. 72(b)(3). The Court must review *de novo* the portions of the report to which objections are made. *Id.* "If no objection or only partial objection is made, the district court judge reviews those unobjected portions for clear error." *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

## II. Background

This matter arose while Reynolds was housed at the United States Penitentiary at Marion, Illinois ("USP-Marion"). He believes that USP-Marion employees created a hostile work environment between convicted sex offenders like Reynolds and other inmates not convicted of sex offenses. Specifically, he alleges Stephanie Hall, a staff cook supervisor at USP-Marion, and other USP-Marion employees caused such an environment through a pattern of harassing sex offenders, which included making derogatory comments and encouraging confrontation between sex offenders and other inmates. Pl.'s 2d Am. Compl. ¶¶ 6-7. He alleges that USP-Marion employees Hall, David Gold, Kevin Sieveking and Randy Baggett knew that Reynolds faced a substantial risk of assault because of his sex offense conviction and that failing to supervise inmates in the dining hall created a substantial risk of an altercation. *Id*. at ¶¶ 9-10. Nevertheless, Hall, Gold, Sieveking and Baggett failed to supervise inmates in the dining hall in September 2013, and inmate Phillip Delaney had a verbal fight with Reynolds, then assaulted and severely injured him. *Id*. at ¶¶ 11-12. Gold was present for the verbal fight but did not take any action to prevent the assault; instead, he and Hall, Sieveking and Baggett were out of the dining hall during the assault. *Id*. at ¶¶ 13-14. Reynolds also claims a correctional officer was responsible for monitoring the security video of the dining area at the time, but did not respond to the assault. *Id*. at ¶ 15. Reynolds claims that after the assault, Hall stated she and her coworkers failed to intervene even knowing Reynolds would be severely injured. *Id*. at ¶ 16. The only remaining claim in this case is an FTCA claim against the United States based on the aforementioned conduct of the USP-Marion employees.

## III. The Report

In the Report, Magistrate Judge Sison noted that about half of the offenders housed at

USP-Marion were sex offenders. Reynolds and Delaney, whom other inmates described as a "hater" of sex offenders, worked together in the USP-Marion food service area in consecutive but overlapping shifts, supervised by staff cook supervisors. Cook supervisors were responsible for keeping the food service area safe and secure, including from potentially dangerous items present in the kitchen area. During the overlap between the shifts, Reynolds and Delaney were in the dining hall at the same time; Reynolds was on his lunch break. Reynolds and Delaney had had minor issues with each other before, but on that day a verbal confrontation turned into a full-fledged fight that left Reynolds unconscious. Reynolds ended up being airlifted to a hospital in St. Louis, where he spent several days.

Magistrate Judge Sison found that Reynolds' FTCA claim was not barred by the AICA, the federal statute providing the exclusive remedy to inmates for work-related injuries. He reasoned that the IACA provides the exclusive remedy only for injuries "proximately caused by the actual performance of the inmate's work assignment," 28 C.F.R. § 301.102(a), but Reynolds' injury was caused by another inmate assaulting him during his lunch break. His injury did not occur during a work assignment and was not caused by a work assignment.

Magistrate Judge Sison further found the United States had not proved Reynolds' FTCA claim was barred by the discretionary function exception to the FTCA's waiver of sovereign immunity. *See* 28 U.S.C. § 2680(a). He found that, the discretionary function exception might have applied to bar a suit where federal employees were aware of a safety risk and exercised their discretion as to how to respond. *See Palay v. United States*, 349 F.3d 418, 432 (7th Cir. 2003); *Calderon v. United States*, 123 F.3d 947, 950 (7th Cir. 1997). However, Magistrate Judge Sison found that there were factual disputes about whether the USP-Marion employees exercised their discretion in response to a known risk or instead were simply negligent, careless

3

and/or inattentive in failing to recognize that a risk existed. Viewed in the light most favorable to Reynolds, the evidence shows that the cook supervisors were not even present in the area where the fight happened so could not have been exercising any discretion in choosing how to respond to the risk.

Finally, Magistrate Judge Sison found that there were disputed issues of fact regarding whether any of the prison staff breached a duty of care to Reynolds. Accordingly, he recommended denying the United States' motion for summary judgment based on the merits of Reynolds' FTCA claim.

## IV. Objections and Analysis

### A. IACA

In its objection, the United States challenges Magistrate Judge Sison's recommendation regarding the IACA, arguing that he interpreted "work-related" too narrowly. It argues that since Reynolds was injured at his work location, the fact that he was on a lunch break at the time does not take it out of the scope of the IACA. It cites numerous cases where injuries occurred during a work break or while an inmate was going to or from a work break, and the court found the IACA applied.

In response to the United States' objection, Reynolds argues that a work-related injury must be "proximately caused by the actual performance of the inmate's work assignment." 28 C.F.R. § 301.102(a). He notes that the Court of Appeals for the Seventh Circuit has never adopted the expansive view of "work-related" applied in the cases the United States cites. It further points to this Court's decision in *Buechel v. United States*, No. 08-cv-132-JPG-CJP, 2010 WL 915042 (S.D. Ill. Mar. 11, 2010) (adopting Report and Recommendation), holding the IACA did not bar an FTCA claim by an inmate who had acquired a staph infection from another inmate

at his prison job repairing laundry machines. There, the Court reasoned that the illness was not work-related because the plaintiff's exposure to staph was not present in a particular degree in the specific work setting in comparison with employment generally, and staph was not an occupational disease or illness. Reynolds further argues that the United States has waived this argument by failing to raise it earlier in the case.

All parties agree that, as explained in the Report, if Reynolds' injury is covered by the IACA, that statute provides his exclusive remedy and he cannot maintain a suit under the FTCA. The critical question is, therefore, whether his injury is covered by the IACA. The Court does not subscribe whole-heartedly to the narrow definition of "work-related" offered by Reynolds—that the only injuries deemed work related are those proximately caused by an actual hands-on performance of a work assignment. However, neither does the Court completely accept the United States' broad view—that anything happening at the work location during work hours is work-related. The Court does not necessarily disagree with those courts that have found the IACA covers injuries that occurred at work locations during work hours but while an inmate was on a break. *See, e.g., Wooten v. United States*, 437 F.2d 79 (5th Cir. 1971) (inmate injured by a malfunctioning elevator on his way to a lunch break); *Giraldo v. United States*, No. 14-CV-5568 JG, 2015 WL 4078751, at *1-*2 (E.D.N.Y. July 6, 2015) (inmate kitchen worker's thumb injury possibly occurring on lunch break was work-related); *Payton v. United States*, No. 5:09-CT-3050-BO, 2011 WL 3240487, at *3 (E.D.N.C. July 28, 2011) (injury was work-related where inmate maintenance worker was injured when staff foreman driving him from worksite to lunch in a motorized cart had an accident).

However, the Court believes that to find an injury "work-related" there must be some nexus between the injury and the work itself beyond just the time and place of the injury. That


is the only way to square the purpose of the IACA to compensate inmates for "injuries suffered . . . . in any work activity" in connection with prison operations, 18 U.S.C. § 4126, with necessary limits to the IACA. Indeed, as the Court noted in *Buechel*, the IACA will not cover an inmate who catches a cold (or staph) at work. *Buechel*, 2010 WL 915042, at *5.

In the context of state law workers' compensation, state courts have considered whether assaults on the job are work-related. For example, in *Greene v. Industrial Commission*, 428 N.E.2d 476 (Ill. 1981), the Illinois Supreme Court held that injuries sustained by an employee from exposure to a "neutral risk" like an assault arose out of employment only if the work exposed him to the risk to a greater degree than the general public, that is, if the work itself increased the risk of assault. *Id.* at 477. On the other hand, in a job that actually does expose workers to increased risk of assault—say, a police officer or prison guard—an assault may very well result in a work-related injury. *See Potenzo v. Illinois Workers' Comp. Comm'n*, 881 N.E.2d 523, 528-29 (Ill. App. Ct. 2007) (job of truck driver making deliveries increased "street risk" like assault). The Court finds this an imminently reasonable approach and, indeed, applied it in *Buechel*.

Under this approach, Reynolds' injury was not work-related. Even though it occurred at the workplace during an approved work break, nothing suggests the job of kitchen service worker increased the risk of assault any more than if Reynolds had been anywhere else in the prison not at his job. Therefore, the Court is not convinced that the exclusive remedy for Reynolds' injury is the IACA and declines to dismiss Reynolds' FTCA claim on that basis.

B.  <u>Discretionary Function Exception</u>

In its objection, the United States challenges Magistrate Judge Sison's recommendation regarding the discretionary function exception to the FTCA's waiver of the United States'

6

sovereign immunity. The United States notes its mandatory duty to care for inmates and keep them safe, *see* 18 U.S.C. § 4042(a)(2) and (3), but argues that it necessarily exercises discretion when carrying out that duty and that its employees' choices in how to carry out that duty are policy decisions. It suggests that USP-Marion staff acted within their discretion to further this policy so long as they did not violate any mandatory command.

In response, Reynolds points to several USP-Marion employees whose conduct he believes was negligent because they did not perform their duties well or respond to the threat of violence by Delaney in a reasonable way. He focuses on the subjective intent of each of the government employees, arguing that it is the United States' burden on summary judgment to indisputably prove each was actually exercising discretion based on policy considerations rather than just slacking off. He argues that the federal employees violated prison policy by failing to act differently to avert or stop Delaney's attack.

The Court agrees with Magistrate Judge Sison to the extent he recommends denying summary judgment based on the cook supervisors' conduct except with respect to Gold's conduct, which is discussed below. Accepting for the purposes of this motion that the duty set forth in 18 U.S.C. § 4042 to care for inmates and keep them safe allows individual employees some discretion in how to accomplish the goal—satisfying the first requirement for the discretionary function exception to apply—the United States has presented absolutely no evidence showing that the kitchen workers behaved as they did in September 2013 because they made discretionary decisions about how to accomplish that, or some other, policy goal. They did not, for example, provide any affidavit saying, "I was not in the dining hall to oversee inmate workers there because I thought it was more important to keep tabs on dangerous equipment in the back room," or "monitor the warehouse, chemical room, or storage area," or "in light of my

perception of no immediate security threat, complete administrative tasks," or any of the myriad functions the cook supervisors were tasked with performing to maintain safety and security in the kitchen area. Nor is there any testimony that any cook supervisor failed to rush to break up the fight because he or she deemed other security actions more advisable. For these reasons, the Court finds the United States has not shown it is entitled to judgment as a matter of law by virtue of the discretionary function exception based on the cook supervisors' conduct (except for Gold, who is discussed below).

The same holds true regarding the two correctional officers in the control room who might have observed the beginnings of the fight between Reynolds and Delaney on the video feed and acted to prevent its escalating. It is true that there is no mandatory duty that the officers watch the video at any particular time or react in a specific way if they see a security threat; monitoring the video and responding to security threats were discretionary decisions. However, it is equally true that there is no evidence that the officers failed to see and/or respond to the confrontation in the dining hall because they were exercising their discretion in consideration of a prison policy—they could have been elsewhere in the prison accomplishing other security functions. However, they also could have been, say, asleep or playing cards, or some other reason that has nothing to do with making a discretionary judgment about how to maintain security at the prison. Because the discretionary function exception is an affirmative defense, affirmative evidence of the defendants' exercise of discretion in implementing a policy is exactly the kind of evidence that the United States needed to produce to show its entitlement to the defense, yet it failed to do so.

With respect to Gold, who was alleged to have walked right by the loud, budding fight between Reynolds and Delaney, he testified in his deposition that he looked around the room and

that nothing unusual was happening between Reynolds and Delaney (or anywhere else) that gave him any concerns about how they were interacting, so he continued with his task setting up the food service line. Gold Dep. 60-61, 101. He was not aware of the assault until it was over and Reynolds was on the ground. This uncontradicted testimony demonstrates Gold was making a discretionary decision, weighing his observations and perceptions about his surroundings and assessing the threat level (rightly or wrongly) before implicitly making a decision not to take any immediate action. Regardless of whether his observations and perceptions were the same as those of others in the room and whether others would have chosen to take the same action (or inaction), it is clear Gold was exercising a discretionary judgment about security needs. Thus, the United States is immune from liability for Gold's conduct.

C. Negligence

In its objection, the United States blends its substantive argument on the merits of Reynolds' FTCA claim with its discretionary function exception argument, continuing to assert that the fight between Reynolds and Delaney was unforeseeable to the prison employees whose conduct is in issue. Reynolds maintains that in the prison environment that existed at the time, injuries to Reynolds were foreseeable.

The Court agrees with Magistrate Judge Sison's assessment to the extent it applies to the cook supervisors except Gold, whose conduct is no longer in issue because he was exercising a discretionary function in consideration of a policy matter. As for the other cook supervisors, the Court notes there is evidence that the prison was experiencing an atmosphere of hostility among inmates due to the influx of sex offenders to USP-Marion shortly before the incident in question. There is also evidence that at least one cook supervisor was aware of friction between Reynolds and Delaney based on a dispute in the food service line over Delaney's serving Reynolds an

9

unacceptable portion of food. There is evidence that (other than Gold, who was occupied) there were no cook supervisors in the dining hall to supervise inmates working in the food service area. Finally, there is evidence that Reynolds' and Delaney's verbal dispute may have been loud enough for cook supervisors outside the dining hall to hear and respond to. The Court finds that this evidence is sufficient for a reasonable factfinder to conclude that an altercation was reasonably foreseeable and that the cook supervisors were negligent in providing for Reynolds' safety.

There is no evidence, however, that the two correctional officers assigned to the control room knew about or should have known about any danger to Reynolds. No party has pointed to any evidence that either of the correctional officers actually saw the altercation on the video feed. Additionally, there is no evidence the officers had a duty to monitor the video feed to detect threats in progress. Instead, monitoring the video feed was something they were permitted to do when they were not busy with other security tasks. The dearth of evidence in the record about what the correctional officers were actually doing at the relevant time simply cannot support the finding that they knew or should have known about any danger to Reynolds such that they had a duty to monitor the dining hall feed and respond to the risk of a fight.

In light of the foregoing, the Court will deny the United States' motion for summary judgment but, pursuant to Federal Rule of Civil Procedure 56(g), states for the purposes of trial that it is not in dispute and it is established as a matter of law that (1) Gold's conduct cannot be the basis for FTCA liability because he was exercising a discretionary function in consideration of policy and (2) the correctional officers assigned to the control room were not negligent. Remaining for trial is Reynolds' FTCA claim based on the conduct of the cook supervisors other than Gold.

10

## V. Conclusion

For the foregoing reasons, the Court:

- **ADOPTS** the Report (Doc. 117) as **MODIFIED** by this order;

- **OVERRULES** the United States' objections (Doc. 118);

- **DENIES** the United States' motion for summary judgment (Doc. 90);

- **DENIES** the United States' motion to dismiss (Doc. 92); and

- **ORDERS** the parties to submit a proposed final pretrial order to Magistrate Judge Sison's chambers on or before July 12, 2019.

**IT IS SO ORDERED.**
**DATED: June 4, 2019**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**